IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| ATEGRITY SPECIALTY INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>CARSON LOOP ESM, LLC DBA BUDGETEL HOTEL, SRINIVAS BOLLEPALLI, and S.T.,<br><br>Defendants. | CIVIL ACTION<br>NO.: 4:25-cv-00157-WMR |

**PLAINTIFF ATEGRITY SPECIALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Ategrity Specialty Insurance Company (hereinafter "Ategrity"), by and through its undersigned counsel, hereby files its Brief in Support of Its Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure Rule 12(c), showing the Court as follows:

**INTRODUCTION**

This case involves a dispute over insurance coverage between Ategrity and Defendants Carson Loop ESM, LLC dba Budgetel Hotel ("Carson Loop") and Srinivias Bollepalli ("Bollepalli") regarding a lawsuit filed against them by Defendant S.T ("the Underlying Lawsuit"). Carson Loop and Bollepalli seek

PD.56089641.4

coverage for the Underlying Lawsuit under a commercial general liability insurance policy issued to Carson Loop by Ategrity bearing policy number 01-C-PK-P20013476-0 for the policy period of December 12, 2020, to December 12, 2021 ("the Policy").

In the Underlying Lawsuit, S.T. alleges that she was sex trafficked from August 2020 to May 2021 at a hotel owned and/or managed by Carson Loop and Bollepalli. S.T. claims that the manager of the hotel forced her to perform sexual acts for himself and others and threatened her with force and eviction if she did not comply. S.T. alleges that Carson Loop and Bollepalli had actual or constructive notice that she was being trafficked at the hotel and contends that they are directly and vicariously liable for the acts and negligence of their employees, including the offending manager. The Underlying Lawsuit's counts against Carson Loop and Bollepalli include: Count I – Negligence Allegations and Count II – Statutory Liability: Sex Trafficking 18 U.S.C. § 1595. Ategrity is currently providing a defense to Carson Loop and Bollepalli in the Underlying Lawsuit pursuant to a complete reservation of rights.

Based on the allegations of the Underlying Complaint, Ategrity has no duty to defend Carson Loop or Bollepalli under either Coverage A – Bodily Injury And Property Damage Liability or Coverage B – Personal And Advertising Injury Liability based on the Policy's Human Trafficking Exclusion. Accordingly, Ategrity

- 2 -

has no duty to defend or indemnify Carson Loop or Bollepalli with respect to the Underlying Lawsuit. Ategrity is therefore entitled to judgment on the pleadings as a matter of law that it has no duty to defend or indemnify Carson Loop or Bollepalli with respect to the Underlying Lawsuit.

## **STATEMENT OF FACTS**

### **I.    The Underlying Action**

Defendant S.T. commenced suit against Defendants Carson Loop and Bollepalli on September 19, 2024, in a lawsuit styled *S.T. v. Carson Loop ESM, LLC d/b/a Budgetel, and Srinivas Bollepalli*, Case No. 4:24-cv-00225-WMR, which is pending before this Court. (Underlying Compl., ECF No. 9-1). An Amended Complaint was filed on July 23, 2025. (See Amended Underlying Compl., a true and correct copy of which is attached hereto as "Exhibit A").[1]

In the Underlying Lawsuit, S.T. alleges that she was sex trafficked while residing at a hotel owned and/or managed by Carson Loop and Bollepalli that is located at 35 Carson Loop NW, Cartersville, Georgia ("the Hotel"). (See generally,

---

[1] On a motion for judgment on the pleadings, a court may consider documents outside the pleadings that are central to the claim at issue and whose authenticity is undisputed. See Short Term Rental Owners Assoc. of Georgia, Inc. v. Cooper, 515 F.Supp. 3d 1331, 1337 n.1 (N.D.Ga. 2021); Nationwide Prop. & Cas. Ins. Co. v. Hampton Court, L.P., 754 F.Supp. 3d 1349 (N.D.Ga. 2024) (finding that an underlying complaint made the subject of an insurer's declaratory judgment action could be considered in conjunction with a motion for judgment on the pleadings as the underlying complaint was obviously central to the insurer's claims and neither party disputed its authenticity).

- 3 -

id.) S.T. claims that Carson Loop and Bollepalli engaged in wrongful conduct and fostered an environment where sex trafficking could thrive by negligently failing to keep their premises safe for their invitees, negligently hiring, retaining, training, entrusting, and supervising their employees, and by violating the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591(a) *et seq*. (See generally, id.)

Specifically, S.T. claims that she was sex trafficked from August 2020 to May 2021 at the Hotel and "at all times relevant to [the Underlying] Complaint." (Id., ¶¶ 14, 17, 25). S.T. alleges that she lived at the Hotel as part of her participation in a rapid rehousing program for homeless individuals and that Carson Loop received full payment of her rent in advance. (Id., ¶ 17). After arriving at the Hotel, S.T. alleges that she was subjected to sexual advances by then-manager of the Hotel, Shreesh Tiwari ("Tiwari"). (Id.) S.T. claims Tiwari forced her to perform oral sex on him and threatened her with violence and eviction if she refused. (Id., ¶ 18). S.T. also claims that Tiwari forced her to have sex for money with another guest at the Hotel and that Tiwari took the money paid for S.T.'s sexual services. (Id., ¶ 19). She further alleges that Tiwari was arrested by Homeland Security for the sex and labor trafficking of at least eight women at the Hotel and that he later plead guilty to sex trafficking charges. (Id., ¶¶ 22, 25). Other Hotel staff, including Bollepalli, were also allegedly aware of or involved in S.T.'s trafficking. (Id., ¶¶ 23-24). S.T. claims that

Carson Loop and Bollepalli had actual or constructive notice that she was being sex trafficked at the Hotel, and that they benefited from participation in a venture in which she was sex trafficked. (Id., ¶¶ 14, 23). She argues that Carson Loop and Bollepalli are directly and vicariously liable for the acts and negligence of their employees, including Tiwari. (Id., ¶ 32).

The Underlying Lawsuit's counts against Carson Loop and Bollepalli include: Count I – Negligence Allegations based on Carson Loop and Bollepalli's failure to deter sex trafficking at the Hotel and Count II – Statutory Liability: Sex Trafficking 18 U.S.C. § 1595. (Id., ¶¶ 34-69). Under these counts, S.T. seeks to recover all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. (See generally, id.)

## II. The Ategrity Policy and Claim

Ategrity issued policy number 01-C-PK-P20013476-0 to "Carson Loop ESM LLC DBA BUDGETEL HOTEL" effective December 12, 2020, to December 12, 2021. (See Policy, ECF No. 9-2). The Policy's coverages include Coverage A – Bodily Injury And Property Damage Liability and Coverage B – Personal And Advertising Injury Liability which provide up to $1,000,000 in coverage for each accident, subject to the Policy's terms, conditions, limitations, and exclusions. (Id.)

Following receipt of the Underlying Complaint and a subsequent investigation of the claim, Ategrity initially disclaimed coverage. However, Ategrity later agreed to defend Carson Loop and Bollepalli subject to a complete reservation of rights. (See ECF No. 27, ¶10.) Ategrity thereafter assumed the defense of Carson Loop and Bollepalli and continues to retain counsel to represent both Defendants in the Underlying Lawsuit, which remains pending.

Ategrity filed the instant action seeking a declaration that it has no duty to defend or indemnify Defendants Carson Loop and Bollepalli with respect to the Underlying Lawsuit. In their Answer to Ategrity's First Amended Complaint, Defendants Carson Loop and Bollepalli raise a counterclaim against Ategrity for breach of contract. (See Answer to First Am. Compl. and Countercl., ECF No. 27). These Defendants argue that Ategrity breached its obligations under the Policy by failing "to undertake the defense of Carson Loop and Bollepalli in a timely manner." (ECF No. 27, ¶¶ 8-9). Ategrity denies these allegations. For the reasons set forth below, based on the pleadings, Ategrity is entitled to judgment as a matter of law that it has no duty to defend or indemnify Defendants Carson Loop and Bollepalli with respect to the Underlying Lawsuit, and that the counterclaim raised against it by Defendants Carson Loop and Bollepalli is without merit.

## ARGUMENT

**I.     Legal Standards**

PD.56089641.4

A party may bring a motion for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The pleadings are closed for the purposes of Rule 12(c) once the defendant answers the plaintiff's complaint. Storey v. Breedlove (In re Breedlove), 545 B.R. 359, 365 (Bankr. M.D. Ga. 2016). When an answer fails to state a legal defense to a claim, the issue may be raised "by a motion under Rule 12(c)." See Fed. R. Civ. P. 12(h)(2)(B). "After the pleadings are closed but within such time as not to delay trial, a party may file a motion for judgment on the pleadings." Fed. R. Civ. P. 12(c); Massey, Inc. v. Moe's Southwest Grill, LLC, Civ. Act. No. 1:07-CV-0741-RWS, 2008 WL 4767788, * 1 (N.D. Ga. Oct. 27, 2008).

A motion for judgment on the pleadings should be granted "when there are no material facts in dispute and judgment may be rendered by considering the substance of the pleadings." Long v. Fulton Cnty. Sch. Dist., 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011) (quoting Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002)); see Scott v. Taylor, 405 F.3d 1251, 1253 (11th Cir. 2005). When the plaintiff moves for judgment on the pleadings, the factual allegations of the answer should be accepted as true, and the factual allegations of the complaint should be accepted as true "where and to the extent that they do not conflict with those of the answer." Akin v. TMC Maint. Co., LLC, Civil Act. No. 1:19-CV-5421-MLB, 2021 WL 3578720, at *2 (N.D. Ga. Aug. 13, 2021).

A plaintiff is entitled to judgment on the pleadings "if the defendant admits

allegations establishing liability *and* fails to offer any pertinent defense" or offers only defenses which are legally insufficient. Vann v. Institute of Nuclear Power Operations, Inc., Case No. 1:09-CV-1169-CC-LTW, 2010 WL 11601718, at *2 (N.D. Ga. July 15, 2010) (emphasis in original) (collecting authority).

## II. Duty to Defend Standard

Under Georgia law, an insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy. See Fireman's Fund Ins. Co. v. Univ. of Ga. Ath. Ass'n, 654 S.E.2d 207, 209 (Ga. Ct. App. 2007). To excuse the duty to defend, the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Penn-Am. Ins. Co. v. Disabled Am. Veterans, 490 S.E.2d 374, 376 (Ga. 1997). Where the claim is one of potential coverage, doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured. Id. Under Georgia law, the general rule is that in making a determination of whether to provide a defense, an insurer is entitled to base its decision on the complaint and the facts presented by its insured, and the insurer is under no obligation to independently investigate the claims against its insured. Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. To31504670 & To31504671, 491 S.E.2d 337, 338 (Ga. 1997).

## III. Policy Interpretation

As with any contract, Georgia courts give words used in an insurance policy their usual and common meaning. Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016). In interpreting the text of an insurance policy, if it is "explicit and unambiguous," Georgia courts "apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Id. This result holds "because Georgia law permits an insurance company to 'fix the terms of its policies as it sees fit, so long as they are not contrary to the law,' thus companies are free to 'insure against certain risks while excluding others.'" Id. (quoting Payne v. Twiggs County Sch. Dist., 496 S.E. 2d 690 (Ga. 1998); Continental Cas. Co. v. HSI Fin. Svcs., 466 S.E. 2d 4 (Ga. 1996)).

A Georgia court only looks beyond the text of an insurance policy when it determines that the text is ambiguous. Certain Underwriters at Lloyd's of London v. Rucker Const., Inc., 648 S.E.2d 170, 174-75 (Ga. Ct. App. 2007). An insurance policy provision is considered ambiguous when it is susceptible to two or more reasonable constructions. Hurst v. Grange Mut. Cas. Co., 470 S.E. 2d 659, 663 (Ga. 1996). After ambiguity is established, then, and only then, do Georgia courts move to the second step in the ambiguity analysis and apply statutory rules of contract construction, such as construing provisions strictly against the drafter, to resolve the dispute. Id. And if the ambiguity "cannot be resolved through the rules of

construction," Georgia courts may, as a third step, look to parol evidence. Coppedge v. Coppedge, 783 S.E. 2d 94, 97 n.3 (Ga. 2016).

As set forth below, based on the allegations of the Underlying Complaint and the unambiguous terms of the Policy, Ategrity has no duty to defend Defendants Carson Loop and Bollepalli in the Underlying Lawsuit.

**IV.    The Policy's Human Trafficking Exclusion Bars Coverage for the Underlying Lawsuit.**

The Policy's Commercial General Liability Coverage Form contains two relevant coverages: (1) Coverage A – Bodily Injury And Property Damage Liability ("Coverage A"); and (2) Coverage B – Personal And Advertising Injury Liability ("Coverage B"). (ECF No. 9-2, at pp. 32, 37 of 60 [Policy, Form CG 00 01 04 13 at pp. 1, 6 of 16]). As set forth in greater detail below, the Policy's Human Trafficking Exclusion, which applies to both of those coverages, precludes coverage for all the claims and allegations set forth in the Underlying Lawsuit.

Both Coverage A and Coverage B are subject to an endorsement which provides that the coverages do not apply to:

> **Human Trafficking**
>
> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury," arising out of, related to, caused by, contributed to by, or in any way connected with:
> (1) "Human Trafficking" committed or caused, directly or indirectly, by you, any insured, any person, any entity, or by any means whatsoever;
> (2) the failure to suppress or prevent the occurrence of "Human

- 10 -

Trafficking" by you, any insured, any person, any entity, or by any means whatsoever;

(3) the failure to provide an environment safe from "Human Trafficking";

(4) the failure to warn of the dangers of the environment which could contribute to the occurrence of "Human Trafficking";

(5) "Human Trafficking" arising out of the negligent employment, investigation, hiring, supervision, training, or retention of any person or entity;

(6) the failure to contact any law enforcement or other legal authority regarding any suspicion or occurrence of "Human Trafficking";

(7) the failure to render or secure medical treatment or care necessitated by any occurrence of "Human Trafficking"; or

(8) death, including any allegations of wrongful death, arising out of items (1) through (7) listed above.

B. The **DEFINITIONS** Section is amended to include the following:

"Human Trafficking" means transporting, soliciting, recruiting, harboring, providing, enticing, maintaining or obtaining another person for the purpose of exploitation of that person. "Human Trafficking" includes "Sex Trafficking."

"Sex Trafficking" means transporting, soliciting, recruiting, harboring, providing, enticing, maintaining or obtaining another person in which the person is induced by force, fraud or coercion to perform a commercial sexual act or in which the person induced to perform a commercial sexual act has not attained eighteen (18) years of age at the time of such act.

(ECF No. 9-2, at pp. 28-29, of 60 [Policy, Form ASIC-GL-0149 0519, pp. 1-2 of 2]).[2]

All the claims asserted by S.T. in the Underlying Complaint arise out of and seek damages directly resulting from or derivatively of S.T.'s trafficking at the

---

[2] Defendants do not dispute that the copy of the Policy filed as ECF No. 9-2 is an authentic copy of the relevant Policy.

- 11 -

Hotel. S.T. claims that she was almost immediately exploited by Tiwari after arriving at the Hotel as part of the rapid rehousing program and that he forced her to perform commercial sexual acts.

Here, the plain, unambiguous language of the Human Trafficking Exclusion bars coverage for the allegations in the Underlying Lawsuit and its terms should be applied as written. See Smith, 784 S.E.2d at 424 (Ga. 2016) (stating that where contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the insurance contract as written). The Exclusion bars coverage for "bodily injury" or "personal and advertising injury" "arising out of, related to, caused by, contributed to by, or in any way connected with" human trafficking or the failure to deter or warn against the same. (ECF No. 9-2, at pp. 28-29, of 60 [Policy, Form ASIC-GL-0149 0519, pp. 1-2 of 2]). The Underlying Complaint makes repeat and specific references to S.T.'s trafficking. S.T. alleges that she was a "victim of sex trafficking at [Carson Loop and Bollepalli's] hotel at the hands of [their] manager Shreesh Tiwari at all times relevant to" the Underlying Complaint. (Underlying Compl., Ex. A, ¶ 14). She contends Carson Loop and Bollepalli "knowingly benefited from [her] sex trafficking" and "knew or should have known the steps to take to prevent [her] from being sex trafficked at the [Hotel] by its manager, but negligently failed to remedy, prevent or report the trafficking, and negligently hired, trained, retained and supervised their agents and employees,

including … Tiwari." (Id., ¶ 35, 61). S.T. claims that Carson Loop and Bollepalli's negligence "was a cause in fact and a proximate cause of [her] substantial physical, emotional, and psychological harm and other damages." (Id., ¶ 58).

Accordingly, there can be no coverage under either Coverage A or Coverage B for S.T.'s negligence and TVPRA claims against Carson Loop and Bollepalli, and Ategrity therefore has no duty to defend Carson Loop and/or Bollepalli in the Underlying Lawsuit.

While a court has yet to interpret or apply the subject Human Trafficking Exclusion, Georgia courts have enforced similarly broad exclusions at the judgment on the pleadings stage. For instance, in Nationwide Property & Casualty Insurance Company v. Hampton Court, L.P., 754 F.Supp. 3d 1349, 1352-58 (N.D. Ga. 2024), this Court found that an insurance policy's fungi or bacteria exclusion unambiguously barred coverage for an insured's claim and granted an insurer's motion for judgment on the pleadings regarding the insurer's duty to defend and indemnify the insured against a lawsuit alleging wrongful death and personal injury arising from plaintiff's decedent's exposure to mold. In Hampton Court, the fungi or bacteria exclusion barred coverage for bodily injury caused by a "fungi or bacteria incident." Id. at 1355. The Policy defined a "fungi or bacteria incident" as:

> [A]n incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within a building or structure, including its contents, regardless

>of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

Id.

The insurer argued that this exclusion applied to bar coverage for the underlying complaint because that pleading alleged that the decedent's injuries arose in whole or in part from a "fungi or bacteria incident." Id. The insurer argued that this result held even if it was later determined that the decedent's injuries were actually caused by a substance other than mold, because the allegations of the complaint governed the insurer's duty to defend. Id. Further, the insurer argued that the last clause in the definition of "fungi or bacteria incident" barred coverage where mold was "but one among multiple actual or alleged causes that contributed to the incident." Id. In contrast, the insured argued that the exclusion did not apply because the underlying complaint could be read to allege that the decedent's injuries were caused by "exposure to a substance other than fungi or bacteria;" thus, because the claim potentially came within the policy, the insurer owed the insured a duty to defend against the claim. Id.

This Court found the insurer's arguments persuasive and determined that the fungi or bacteria exclusion defeated the insurer's duty to defend or indemnify the insured from and against the underlying complaint. Id. at 1355-56. The Court found that the insured's argument rested upon a strained reading of the underlying complaint that ran contrary to the clear allegations of mold causing the insured's

injuries, at least in part. Id. at 1356. In refuting the insured's argument that the underlying complaint could be read in a way to support coverage, the Court found:

> Although the Underlying Complaint does make five references to "mold and/or other toxic substances," these vague and occasional references to "other toxic substances" are not sufficient to create the ambiguity that [the insured] seeks to present. The repeated and specific references to mold throughout the entirety of the Underlying Complaint make clear that the Underlying Complaint alleges that mold at least in part caused Decedent's illness – which is all that is necessary to trigger the Fungi or Bacteria Exclusion. As mentioned above, the Underlying Complaint plainly states in its opening paragraph that the defendants in the underlying suit "allowed a dangerous substance – mold – to grow in Decedent's […] apartment and failed to warn Decedent […] and remediate the mold.

Id.

A similar result was also reached in a recent case before the United States District Court for the Southern District of Georgia. This case examined whether a firearms or weapons exclusion barred coverage for negligence claims raised against an insured arising from injuries patrons received at the insured's bar in a shooting incident. See Trisura Spec. Ins. Co. v. Nyrsha LLC, Case No. CV 224-105, 2025 WL 2098107 (S.D.Ga. July 25, 2025) (finding, at the judgment on the pleadings stage, that a firearms exclusion barred coverage for negligent security claims raised against an insured following a shooting at its bar).

Here, the language of the Human Trafficking Exclusion is plain, unambiguous, and comparable to the insurance exclusions recently enforced by this Court and the Southern District of Georgia in Hampton Court and Nyrsha,

- 15 -

respectively, on motions for judgment on the pleadings. Thus, Ategrity respectfully requests that the Court apply the Human Trafficking Exclusion as written and enter judgment on the pleadings in favor of Ategrity that it has no duty to defend Carson Loop or Bollepalli with respect to the Underlying Lawsuit.

**V.     Because There Is No Duty to Defend, There Can Be No Breach of Contract.**

In their Counterclaim, Carson Loop and Bollepalli allege that Ategrity breached its duty to defend by failing to hire defense counsel to defend Carson Loop and Bollepalli in the Underlying Lawsuit in a timely manner, which caused them to incur $101,252.09 in legal fees. (ECF No. 27, ¶¶ 9-12) "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Norton v. Budget Rent a Car Sys., 307 Ga. App. 501 (2010). As set forth above, Ategrity has no duty to defend Carson Loop and Bollepalli. Therefore, there has been no breach of the Policy. Thus, Ategrity respectfully requests that the Court enter judgment on the pleadings in favor of Ategrity that it has not breached the Policy.

**VI.    Because There Is No Duty to Defend, There Can Be No Duty to Indemnify.**

Under Georgia law, the duty to defend is broader than the duty to indemnify. Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). Thus, if there is no duty to defend, there is no duty to indemnify. Nat'l Cas. Co. v. Pickens, 582 F.

- 16 -

App'x 839, 841 (11th Cir. 2014). Here, as set forth above, Ategrity has no duty to defend Carson Loop or Bollepalli under either Coverage A or Coverage B of the Policy because, based on the allegations of the Underlying Complaint, the Human Trafficking Exclusion bars coverage. Accordingly, because Ategrity has no duty to defend, it can have no duty to indemnify. Ategrity is therefore entitled to judgment on the pleadings as a matter of law that it has no duty to defend or indemnify with respect to the Underlying Action.

## CONCLUSION

For all the reasons set forth above, Ategrity respectfully requests that the Court grant its Motion and enter judgment on the pleadings in favor of Ategrity that it has no duty to defend Carson Loop or Bollepalli or to indemnify anyone with respect to the Underlying Lawsuit, and that such a determination defeats the counterclaim raised by Carson Loop and Bollepalli against Ategrity.

Respectfully submitted this the 25th day of November, 2025.

**PHELPS DUNBAR LLP**

BY: */s/ Christy M. Maple*
Christy M. Maple
Georgia Bar No. 240807
4300 Edwards Mill Road, Suite 600
Raleigh, NC 27612
Telephone: (919) 789-5300
Facsimile: (919) 789-5301
Email: christy.maple@phelps.com

*Attorney for Plaintiff Ategrity Specialty Insurance Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Michael C. Kendall<br>mike@kendall-legal.com<br>Michael C. Kendall, II<br>michael@kendall-legal.com<br>John C. Kendall<br>chris@kendall-legal.com<br>KENDALL LEGAL, LLC<br>3152 Gold Ridge Blvd., Suite 201<br>Douglasville, Georgia 30135<br>T: (770) 577-3559<br>F: (770) 577-8113<br>*Counsel for Defendants Carson Loop ESM, LLC DBA Budgetel Hotel and Srinivas Bollepalli* | Peter A. Law<br>pete@lawmoran.com<br>E. Michael Moran<br>mike@lawmoran.com<br>Denise D. Hoying<br>denise@lawmoran.com<br>LAW & MORAN<br>563 Spring Street, NW<br>Atlanta, Georgia 30308<br>T: (404) 814-3700<br><br>Patrick J. McDonough<br>pmcdonough@atclawfirm.com<br>Jonathan S. Tonge<br>jtonge@atclawfirm.com<br>ANDERSEN, TATE & CARR, P.C.<br>One Sugarloaf Center<br>1960 Satellite Boulevard, Suite 4000<br>Duluth, Georgia 30097<br>*Counsel for Defendant S.T.* |

                                                    */s/ Christy M. Maple*
                                                    Christy M. Maple, GA Bar No. 240807
                                                    christy.maple@phelps.com
                                                    *Attorney for Plaintiff/Counterclaim Defendant Ategrity Specialty Insurance Company*

PHELPS DUNBAR LLP
4300 Edwards Mills Rd., Suite 600
Raleigh, North Carolina 27612-3723
Telephone:  919-789-5300
Facsimile:   919-789-5301

PD.56089641.4